## Richmond

### Herbert T. Mitchell

### v.

### Helen Thayer Mitchell

Record No. 810514.

March 9, 1984.

Present: All the Justices.

*Elaine H. Cassel (Blair & Cassel*, P.C., on brief), for appellant.
*Frances F. Halsey* for appellee.

COCHRAN, J., delivered the opinion of the Court.

In 1976, Herbert T. Mitchell filed a bill of complaint in the trial court seeking a divorce from his wife, Helen Thayer Mitchell, on the ground of voluntary separation without interruption for more than one year. Mitchell alleged that Helen was a resident of Honolulu, Hawaii, and the bill of complaint, with subpoena at-

tached, was personally served on her in that city by the sheriff of Honolulu. She made no appearance in person or by counsel. Based upon the report of a commissioner in chancery that jurisdictional requirements had been met and the alleged ground for divorce had been established, the trial court, by decree entered on June 18, 1976, granted Mitchell a divorce *a vinculo matrimonii*. The decree contained no provisions relating to support and maintenance of Helen or the disposition of personal property.

On June 16, 1978, Helen filed a petition for rehearing under the provisions of Code § 8.01-322. The petition was served on Mitchell's attorney in the divorce proceeding, but the attorney filed a motion objecting to such service on the ground that he was not in contact with Mitchell, a State Department employee reportedly in San Salvador, and asking that the court order service to be made in some other manner. The court granted the motion and directed that service be made on Mitchell by certified mail to his last known address. Service in this manner was made, Mitchell signing the return receipt. He made no appearance in person or by counsel in the proceedings. The trial court granted Helen's petition and permitted her to answer and plead to Mitchell's original bill of complaint.

Helen filed an answer denying that Mitchell was a resident of Virginia for six months prior to filing the bill of complaint and denying that she and Mitchell lived separate and apart for one year without cohabitation. She also filed a cross-bill seeking separate maintenance and return of her personal property in Mitchell's possession. The cause was referred to a commissioner in chancery who conducted an evidentiary hearing on September 9, 1980. Helen testified at the hearing, but her testimony was corroborated only by *ex parte* affidavits received as "exhibits" by the commissioner.

The second commissioner, in effect, repudiated the report of the first commissioner, who had recommended to the court that the 1976 divorce be granted. The second commissioner reported that Mitchell had not lived in Virginia for six months prior to filing his bill of complaint, that Mitchell and Helen had cohabited within the year, and that any separation was not caused by any decision of either party to be separated permanently from the other. The second commissioner also reported that an injustice was done to Helen in entering the decree of divorce. By decree entered January 6, 1981, the trial court set aside the 1976 divorce decree as

void for lack of jurisdiction, and awarded Helen $500 per month for support and maintenance, in addition to attorney's fees and court costs. Mitchell appealed from the decree insofar as it vacated the earlier divorce decree. It was represented to us at oral argument, and not denied, that Mitchell remarried after obtaining his divorce in 1976 and that a child was born of this marriage in 1980.

We need not consider the alleged irregularities and errors in the proceedings before the second commissioner. The dispositive question presented in this appeal is whether Helen was entitled to petition for a rehearing under the provisions of Code § 8.01-322, which reads as follows:

**Within what time case reheard on petition of party served by publication, and any injustice corrected.**—If a party against whom service by publication is had under this chapter did not appear before the date of judgment against him, then such party or his representative may petition to have the case reheard, may plead or answer, and may have any injustice in the proceeding corrected within the following time and not after:

1. Within two years after the rendition of such judgment, decree or order; but

2. If the party has been served with a copy of such judgment, decree, or order more than a year before the end of such two-year period, then within one year of such service.

For the purpose of subdivision 2 of this section, service may be made in any manner provided in this chapter except by order of publication, but including personal or substituted service on the party to be served, and personal service out of the Commonwealth by any person of eighteen years or older and who is not a party or otherwise interested in the subject matter in controversy.

Before it was amended and renumbered as § 8.01-322 (Acts 1977, c. 617), Code § 8-78 (Cum. Supp. 1976) read as follows:

Any unknown party, or other defendant, who was not served with process, and did not appear in the case before the date of such judgment, decree, or order, or the representative of any such, may, within two years from that date, if he be not served with a copy of such judgment, decree, or order,

more than a year before the end of the two years, and if he be so served, then within one year from the time of such service, petition to have the case reheard, and may plead or answer, and have any injustice in the proceedings corrected.

Code § 8.01-320 and its predecessor statute, § 8-74, provide for personal service of process upon a nonresident defendant out of Virginia. Under § 8-74, service could be made "by any person not a party to or otherwise interested in the subject matter." As amended and renumbered as § 8.01-320 (Acts 1977, c. 617), the statute provides that only a sheriff may make personal service on a nonresident defendant in a divorce proceeding. In its original and amended form, however, the statute provides that "such service shall have the same effect, and no other, as an order of publication duly executed."

Proceeding against a nonresident defendant by order of publication with the right reserved to such defendant to petition for a rehearing has long been authorized in Virginia. Thus, Chapter 123 of the 1819 Acts of Assembly, published in the Code of 1819, volume 1, pages 474-75, not only provided for service by order of publication but also authorized a nonresident defendant to petition the court to rehear the cause within seven years after entry of a decree against him. In the Code of 1849, "[a]ny unknown party or other defendant who was not served with process and did not appear" could petition for a rehearing within five years from the entry of a judgment, order or decree. Code of 1849, Title 51, Chapter 170, § 13. The same provision was included in the Code of 1860 as Title 51, Chapter 170, § 13. In 1873, § 12 of the same statute, pertaining to orders of publication, was amended to include for the first time this provision:

Personal service . . . may be made by any person not a party to or otherwise interested in the subject matter in controversy, on a non-resident defendant out of this state, which service shall have the same effect, and no other, as an order of publication duly posted and published against him.

Acts 1873, c. 127.

Section 12, as thus amended, and Section 13 without amendment were included in the Code of 1873 as Sections 15 and 16, respectively, of Chapter 166, Title 51. In the Code of 1887, Section 12 became § 3232, and Section 13 became § 3233. The time

within which a petition for rehearing must be filed, however, was reduced to three years in § 3233. In the Code of 1919, § 3232 became § 6071, and § 3233 became § 6072, and the time for filing a petition for rehearing was further reduced to two years. In the Code of 1950, § 6071 became § 8-74, and § 6072 became § 8-78 without substantial change.

From the foregoing brief history of the statutes it appears that the provision for a "defendant who was not served with process and did not appear" during the pendency of the case to petition for a rehearing antedates the provision for personal service on a nonresident defendant. The 1873 statute authorizing personal service also provided that such service should have only the effect of an order of publication. Until 1977, however, the language of § 8-78 and its predecessor statutes remained substantially unchanged. In 1977, § 8.01-322 was amended to authorize the filing of a petition for rehearing only by a party, or his representative, against whom service was made by order of publication.

In our view, this 1977 amendment merely clarified what had always been the meaning and intent of the statute. Under the predecessor statute, § 8-78, a petition for rehearing could only be filed by a defendant who was not served with process. We have held that a party proceeded against by order of publication has not been served with process within the meaning of the statute. *Robertson* v. *Stone*, 199 Va. 41, 45, 97 S.E.2d 739, 743 (1957). Helen, having been personally served with process, did not come within the purview of the statute as it then read. Under § 8.01-322, as amended in 1977, a petition for rehearing could only be filed by one against whom service was made by publication. Helen, not having been served by publication, did not meet the requirement of the statute as it has read since the 1977 amendment.

Helen argues that § 8.01-320, giving personal service on a non-resident defendant the same effect as an order of publication, makes her eligible for the protection of § 8.01-322. We disagree. The meaning of § 8.01-320 is that the trial court could enter decrees and orders affecting Helen to the same extent as if she had been served by publication. Helen, therefore, was entitled to the same time schedule for appearing or filing pleadings as she could have claimed if she had been served by publication. The effect of the personal service was to give the trial court no more and no less jurisdiction in the litigation than would have arisen

from an order of publication duly posted and published. *See Cranford* v. *Hubbard,* 208 Va. 689, 160 S.E.2d 760 (1968).

The cases arising under § 8.01-322 and predecessor statutes in which petitions for rehearing were granted have invariably involved parties who had no knowledge of the litigation affecting them. In *Cralle* v. *Cralle,* 79 Va. 182 (1884), for example, a wife failed to see a published notice of a divorce action against her. Similarly, in *Willard* v. *Willard,* 98 Va. 465, 36 S.E. 518 (1900), a husband filed for divorce without giving his wife any notice whatsoever. In *Keys Planing Mill Co.* v. *Kirkbridge,* 114 Va. 58, 75 S.E. 778 (1912), a defendant general contractor was never served with a petition which one of its creditors had filed against it. Finally, in *Thomas* v. *Best,* 209 Va. 103, 161 S.E.2d 803 (1968), a consent decree regarding an estate was entered pursuant to notice by publication, and certain heirs who had no knowledge of the decree successfully requested a rehearing.

In addition to these cases, we have held that § 8-78, the predecessor of § 8.01-322, is inapplicable to a defendant who was aware of proceedings against him and who participated in those proceedings. In *Lawrence* v. *Lawrence,* 212 Va. 44, 181 S.E.2d 640 (1971), a divorce action, plaintiff obtained personal service on defendant in Washington, D. C. The case was referred to a commissioner in chancery, and after receiving the commissioner's report, the court awarded plaintiff a divorce *a mensa.* Defendant then requested a rehearing; the court denied his request and held that it amounted to a general appearance on his part. The case was again referred to a commissioner in chancery, and the decree *a mensa* was ultimately merged into a decree *a vinculo.* On appeal, defendant claimed that § 8-78 entitled him to a rehearing of the *a mensa* decree. We held that § 8-78 was inapplicable, since "defendant was fully cognizant of the proceedings," made several special appearances before his general appearance, and participated in the proceedings after the matter was referred to the second commissioner. *Id.* at 48, 181 S.E.2d at 643.

In *Light* v. *City of Danville,* 168 Va. 181, 190 S.E. 276 (1937), a nonresident defendant received personal service in an eminent domain proceeding. He claimed that this service was invalid, as an eminent domain statute specifically provided for notice by publication. Quoting what is now § 8.01-320, we rejected this argument, noting that the statute "simply provides an alternate or substitute

means to accomplish the purpose of the notice intended to be given by an order of publication." *Id.* at 200, 190 S.E. at 283.

■ The rationale of these cases is that § 8.01-322 is intended to protect a party who has no knowledge at all of litigation affecting him. This idea is further supported by certain language in the statute itself. Subdivision 2 of § 8.01-322 says that if a party is served with a copy of a judgment more than a year before the end of the two-year period following the rendition of the judgment, then the petition for rehearing must be filed "within one year of such service." Thus, the General Assembly has provided that a nonresident defendant who has formal notice of a judgment shall have less time than the usual two-year period to petition for a rehearing. Implicit in this provision is concern that a defendant may not be aware of an adverse judgment or decree until he receives formal notice of it. If a defendant has received personal service at the commencement of the litigation, however, and fails to protect his interests, he accepts the risk of an unfavorable result. Therefore, such a defendant is beyond the intendment of the statute.

■ We hold that the provisions of § 8.01-322 are not available to a nonresident defendant who is personally served with process. Therefore, the trial court erred in granting Helen's petition for rehearing. It follows that there was no authority for the court to invalidate the divorce decree of June 18, 1976, and to make other rulings pursuant to the petition for rehearing. Accordingly, we will reverse the decree entered January 6, 1981, and reinstate the divorce decree entered June 18, 1976.

*Reversed and final decree.*